1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

MATTHEW CRAMER,

                                        CASE NO.: 1:08-cv-01693-SKO

12

                        Plaintiff,

**ORDER GRANTING DEFENDANTS
HELLER AND WHEATLEY'S MOTION
FOR SUMMARY JUDGMENT**

13

        v.

14

(Docket No. 92)

15

TARGET CORPORATION, et al.,

**ORDER GRANTING DEFENDANT
BARRIOS' MOTION FOR SUMMARY
JUDGMENT**

16
17

                        Defendants.

(Docket No. 127)

18

_____/

19
20

## I.    INTRODUCTION

21

        Plaintiff Matthew B. Cramer ("Plaintiff") is currently incarcerated and is proceeding pro se

22

and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On July 6, 2010,

23

Defendants Eric Heller ("Heller") and Clebo Wheatly ("Wheatly") filed a motion for summary

24

judgment.  (Doc. 92.)  On September 16, 2010, Defendant Police Officer Greg Barrios ("Barrios")

25

filed a motion for summary judgment.  (Doc. 127.)  Defendants assert that they are entitled to

26

judgment as a matter of law because there are no genuine issues of material fact.  For the reasons set

27

forth below, the Court GRANTS Defendants Heller and Wheatly's motion for summary judgment

28

and GRANTS Defendant Barrios' motion for summary judgment.

## II.   BACKGROUND

**A.   Plaintiff's Claim Pursuant to the Fourteenth Amendment**

This action proceeds on Plaintiff's First Amended Complaint ("FAC") filed on February 17, 2009. (Doc. 10.)  Plaintiff's claim arises out of a theft incident at a Target Store on March 3, 2008, to which Plaintiff pled "no contest."  (Doc. 10, 6:13 ("Plaintiff does not dispute he pled no contest to this theft.").)  In his FAC, Plaintiff asserts that his civil rights were violated due to the conduct of the Target Corporation ("Target") employees, who detained him and questioned him following his theft in the store, as well as the responding police officer who arrested him.

Plaintiff asserts that Michael J. Yant ("Yant"), Heller, an unnamed defendant referred to as the manager of the Target store (who was later identified as Wheatly (*see* Doc. 24)), and Officer Barrios were deliberately indifferent to his serious medical needs during the course of his arrest at the Target store on March 3, 2008.  Plaintiff contends that Yant and Heller, who were working for Target as asset protection specialists, detained him for theft occurring inside the store.  (Doc. 10, p. 5.)  During the course of Plaintiff's apprehension and detention by Yant and Heller, they allegedly assaulted him and handcuffed him so tightly that he bled.  (Doc. 10, p. 6.)  According to the FAC, Barrios was dispatched to the Target store and "arrived on the scene at that time of [Yant] and [Heller] taking custody of Plaintiff.  Defendant Barrios witnessed Defendant[s] Yant and Heller physically assault and drag Plaintiff back into the store."  (Doc. 10, 6:10-20.)  Once inside the store, an unidentified Target supervisor brought Plaintiff a bottle of water and a band-aid for a cut on Plaintiff's finger after Plaintiff lost consciousness four times.  (Doc. 10, 8:1-6.)

Although Plaintiff complained of his injuries and demanded medical attention due to a fractured clavicle, Barrios left Plaintiff in the custody of Heller and Yant at the Target store and stated that he would return later.  (Doc. 10, 7:1-17.) .)  Barrios then went to book another suspect in

1   the same theft incident. (Doc. 10, 7:1-10; Doc. 10, 89-91.)[1]  Officer Barrios did not return for two

2   hours, during which time Plaintiff was denied medical attention. (Doc. 10, p. 7-9.)

3          Upon Defendant Barrios' return to the Target store, he immediately transported Plaintiff to

4   the hospital. (Doc. 10, 9:16-17.)  Plaintiff was diagnosed with a fractured clavicle and was provided

5   an arm sling. (Doc. 10, 9:17-19.)  Plaintiff asserted that his glasses were broken, he suffered dental

6   injury and emotional distress, and he incurred hospital bills. (Doc. 10, 12:23-25.)

7          On June 8, 2009, the Court ordered that Plaintiff's claims for wrongful arrest, detention,

8   accusation, and conviction be dismissed without leave to amend. (Doc. 15.)  The Court found that

9   Plaintiff stated one cognizable claim against Defendants Heller, Yant, Barrios, and the Defendant

10  Doe (Target supervisor/store manager) for deliberate and indifferent delay or deprivation of medical

11  care in violation of Plaintiff's constitutional rights. (Doc. 15.)

12  **B.     Procedural Background**

13         Plaintiff filed his initial complaint on November 7, 2008, against Target and the Tulare Police

14  Department.[2]  (Doc. 1.)  The original complaint was screened pursuant to 28 U.S.C. § 1915(e) and

15  was dismissed with leave to amend on December 9, 2008. (Doc. 5.)  On February 17, 2009, Plaintiff

16  filed an FAC naming four defendants:  Michael J. Yant, Eric Heller, Officer Greg Barrios, and Doe

17

18         [1] Barrios' police report attached to the FAC states the following in relevant part:

19         Upon arrival I observed lost prevention personnel taking custody of [suspect
           ("(S)")] Cramer. Officer Lopez advised via radio that he was contacting the second
20         suspect near the Fed Ex store which is [N]orth of Super Target [p. 89]. I responded
           to Officer Lopez['] location and contacted (S) Callum [p. 89] . . . I responded back
21         to Super Target and contacted Asset Protection Personnel, Eric Heller[,] and
           ascertained (S) Callum's involvement [p. 89] . . . I advised (S) Callum that he was
22         under arrest for burglary and transported him to the Tulare Police Department for
           the booking process [p. 90] . . . (S) Cramer remained in custody of Target Personnel
23         pending their investigation and interview [p. 90] . . . I responded back to Super
           Target and [c]ontacted Asset Protection Personnel, Michael Yant[,] who advised
24         me [p. 93] . . . that before (S) Cramer was able to run [after being confronted by
           Heller and Yant], he and Heller grabbed [Plaintiff] and forced him to the ground
25         [p. 95] . . . I then transported (S) Cramer to the Tulare District Hospital for medical
           treatment due to him complaining of pain to his shoulder. (S) Cramer believed his
26         shoulder to be broken or dislocated due to security personnel forcing him to the
           ground [p. 95].

27  (Doc. 10, p. 89-95.)

28         [2] These parties were not renamed in the body of Plaintiff's FAC. (*See* Doc. 10.)

                                             3

1    Defendant (Target's store manager).  The FAC was screened pursuant to the 28 U.S.C. § 1915(e),

2    and the Court issued Findings and Recommendations determining that Plaintiff stated one cognizable

3    claim for "deliberately indifferent delay or deprivation of medical care" against Defendants Heller,

4    Yant, Barrios, and Doe Defendant.[3]  (Doc. 11, 17:19-24.)  The remainder of Plaintiff's claims were

5    recommended for dismissal with prejudice.   (Doc. 11, 17:25-28.)   These Findings and

6    Recommendations were adopted in full on June 8, 2009.  (Doc. 15.)

7         On July 9, 2009, Plaintiff filed a motion to serve "Clevon Wheaton," who Plaintiff believed

8    was the Doe Defendant Target store manager/supervisor that Plaintiff referenced in his complaint.

9    (Doc. 17.)   The Court determined that service was appropriate on "Clevon Wheaton" who was

10   previously designated John Doe.  (Doc. 24.)  Clebo Wheatly, who was erroneously identified as

11   Clevon Wheaton, answered the complaint on February 23, 2010.  (Doc. 58.)

12        On October 7, 2009, the summons as to Yant was returned unexecuted.  (Doc. 23.)  The

13   remarks on the unexecuted summons indicated that Yant was no longer employed with Target and

14   service of process could not be completed.  (Doc. 23.)  On October 16, 2009, Plaintiff served

15   subpoenas on Target attempting to compel employment records related to Yant, among other items.

16   (See Doc. 37, 2:8-10.)  On November 11, 2009, Target filed a motion to quash the subpoenas issued

17   by Plaintiff.  (Docs. 36, 37, 38, 39, 40.)  On May 4, 2010, the Court quashed the subpoenas as they

18   were improperly issued and served.

19        On May 27, 2010, Plaintiff filed a request that the Court construed as a motion to issue a

20   subpoena duces tecum ordering Target to produce the last-known address of Yant.  (Doc. 81.)

21   Plaintiff's request for the issuance of a subpoena was granted and the Court ordered that Target

22   produce the last-known address of Yant.  (Doc. 89.)  In response to the subpoena duces tecum,

23   Target produced, under seal, Yant's address.  (Doc. 111.)  On August 9, 2010, the Court ordered that

24   the U.S. Marshal attempt service upon Yant at the address produced by Target pursuant to the

25   subpoena duces tecum.  (Doc. 116.)  On October 4, 2010, the summons as to Yant was returned

26   unexecuted.  (Doc. 128 (sealed).)

27

28       [3] Although Heller and Yant were private actors, Plaintiff sufficiently alleged that there was a conspiracy among Heller, Yant, and Barrios such that it supported state action under the joint action test.  (Doc. 11, 12:25-17:10.)

4

Meanwhile, on July 6, 2010, Heller and Wheatly filed a motion for summary judgment. (Doc. 92.) In support of the motion, Wheatly provided a declaration stating that he was on vacation on March 3, 2008, and was not present at the Target store during the alleged events. (Doc. 96.) On July 21, 2010, Plaintiff filed an opposition to Heller and Wheatly's motion for summary judgment. (Doc. 100.) On August 2, 2010, Defendants Heller and Wheatly filed a brief in reply to Plaintiff's opposition. (Doc. 109.)

Also in response to Heller and Wheatly's motion for summary judgment, Plaintiff filed a motion requesting that the Court issue a subpoena duces tecum as to Target for information as to who was managing the Target store on March 3, 2008. (Doc. 105.) On August 13, 2010, the Court issued an order denying Plaintiff's request to issue a subpoena duces tecum. (Doc. 120.) The Court explained that discovery was open and that Plaintiff was entitled to seek this information directly from Defendants. (Doc. 120, 3:5-6.) Further, Plaintiff was instructed that he could renew his request for a subpoena if he was unsuccessful in obtaining the information from Defendants pursuant to the discovery process. (Doc. 120, 3:5-10.)

On September 16, 2010, Defendant Barrios filed a motion for summary judgment. (Doc. 127.) On January 24, 2011, Plaintiff filed an opposition to Defendant Barrios' motion for summary judgment (Doc. 140), to which Defendant Barrios replied on February 3, 2011 (Doc. 143.)

On February 11, 2011, the Court issued an order construing Plaintiff's oppositions to each of the motions for summary judgment as containing Rule 56(f) motions.[4] (Doc. 147.) The Court determined that Plaintiff's Rule 56(f) motions were insufficient because they did not identify any facts or evidence that could be obtained with additional discovery or how any additional discovery evidence would preclude Defendants' motions. In denying Plaintiff's Rule 56(f) motions, however, the Court noted that Defendants' summary judgment motions were filed "before [Plaintiff] had any realistic opportunity to pursue discovery relating to [his] theory of the case" and permitted Plaintiff

---

[4] In its order, the Court noted that, effective December 1, 2010, the Federal Rules of Civil Procedure were amended such that the general provisions of Fed. R. Civ. P. 56(f) are now located at amended Rule 56(d). As the motions were first filed prior to December 1, 2010, the Court determined that it would refer to the rule in effect prior to December 1, 2010, i.e., Rule 56(f). However, the Court also noted that the December 1, 2010, amendment to Rule 56(f) did not change the applicable standards and thus it was immaterial which version of the Rule the Court applied. For consistency, the Court here refers to the motions filed as Rule 56(f) motions rather than Rule 56(d) motions.

an opportunity to renew his 56(f) motion.  By February 11, 2011, discovery had been open for approximately seven months (since August 2010), and the Court determined that Plaintiff would be better positioned to assess what evidence could be obtained.  After providing Plaintiff with the applicable standards, the Court granted Plaintiff an additional 30 days to file renewed Rule 56(f) motions.

On March 2, 2011, Plaintiff filed an "objection/response of denying Plaintiff's Rule 56(f) motion [without] prejudice (for the record for appellate review)." (Doc. 149.) Plaintiff asserted that at least one hour and 47 minutes of Target video surveillance had been withheld by Defendants, and the subpoena he served on Target to obtain this and other evidence was quashed by the Court. (Doc. 149, p. 2, 7.) As a result, Plaintiff asserted that he has been prevented from a meaningful opportunity to discover the video surveillance he believes exists but has not been provided to him. (Doc. 149, p. 2.)

Plaintiff also asserted that he has outstanding medical bills, has suffered a loss of property, and has continuing medical needs, ostensibly as a result of Defendants' alleged conduct on March 3, 2008. (Doc. 149, p. 4 ("Plaintiff has outstanding medical bills, loss of property[,] and continual medical needs, and that alone would defeat summary judgment.").)  He cited his "huge disadvantages" in litigating his case without the assistance of an attorney, and asserted that he does not have the funds to have a specialist opine as to his March 3, 2008, injury. (Doc. 149, p. 6.) Plaintiff also pointed to his limited law-library access as evidence of his difficulty litigating his case. (Doc. 149, p. 11.)

On March 14, 2011, Defendants filed responses to Plaintiff's March 2, 2011, "objection/response" asserting that, to the extent the filing represented a renewed Rule 56(f) motion, it was insufficient and should be denied.  (Docs. 150, 151.)

On May 4, 2011, Heller and Wheatly submitted a supplemental memorandum of points and authorities in support of their motion for summary judgment. (Docs. 155, 156.)  They asserted that Plaintiff's deposition was completed on April 12, 2011, and submitted portions of the deposition

1  transcript indicating that Plaintiff declined pain medication at the emergency room upon receiving

2  medical treatment for his injuries arising out of the events that occurred on March 3, 2008.[5]

3      On May 12, 2011, Defendant Barrios also filed a supplemental memorandum of points and

4  authorities in support of his motion for summary judgment, which referenced portions of Plaintiff's

5  April 12, 2011, deposition indicating that Plaintiff declined pain medication upon receiving medical

6  treatment for his injuries arising out of the events that occurred on March 3, 2008.  (Doc. 160.)

7      On May 17, 2011, Plaintiff filed a motion for a 60-day extension of time to respond to these

8  supplemental memoranda.  (Doc. 162.)  On July 26, 2011, the Court issued an order determining

9  that, pursuant to *Marella v. Terhune*, 568 F.3d 1024 (9th Cir. 2009), the supplemental briefing

10 submitted by Defendants in support of their motions for summary judgment (Docs. 155, 156, 160)

11 injected renewed uncertainty and complexity such that a new notice to Plaintiff pursuant to *Rand v.*

12 *Roland*, 154 F.3d 952, 955 (9th Cir. 1998) was required.  (Doc. 168.)  As such, the Court furnished

13 Plaintiff with *Rand* notice containing information regarding the requirements of the summary

14 judgment rule.

15     In addition, because Plaintiff had been provided a new *Rand* notice, the Court determined

16 it was appropriate that Plaintiff have an opportunity to submit amended or supplemental briefs in

17 opposition to the motions for summary judgment and present any evidence Plaintiff had to support

18 his position.  (Doc. 168, 6:5-13.)  On August 18, 2011, Plaintiff filed a supplemental opposition to

19 Defendants' motions for summary judgment.  (Doc 169.)

20     On September 14, 2011, Chief District Judge Anthony Ishii issued an order indicating that,

21 due to the retirement of Senior District Judge Oliver Wanger, the assignment of this case to Judge

22 Wanger was withdrawn.  (Doc. 171.)  The action remained assigned only to the Magistrate Judge,

23 and the parties were directed to file consent forms indicating whether they were willing to consent

24 to the jurisdiction of the Magistrate Judge.  (Doc. 171.)  All the parties consented  (Docs. 172, 173,

25 175), and the case was assigned to the docket of Magistrate Judge Sheila K. Oberto for all purposes

26 including trial and entry of judgment.  (Doc. 178.)

27

28
---
[5] The entire transcript of Plaintiff's deposition has been lodged with the Court pursuant to Local Rule 133(j).

1  On October 18, 2011, Plaintiff filed a "notice of Plaintiff's Continual Medical Ongoing

2  Treatment to Date" in support of his supplemental opposition to Defendants' motions for summary

3  judgment.  (Doc. 177.)

**III.    DISCUSSION**[6]

**A.    Plaintiff's Rule 56(f) Motions**

**1.    The Parties' Arguments and Procedural Background**

In opposition to Heller and Wheatly's motion for summary judgment, Plaintiff filed a brief

on July 21, 2010, asserting that the motion was premature.  (Doc. 100 at 6:3-5 ("In this instance, it

seems to this plaintiff that the [] moving party(ies) [sic] had prematurely submitted this motion for

summary judgment."), 7:11-13 ("[P]laintiff has YET to be afforded any type of dis[covery] as a

matter of [l]aw, and that in itself is [a] basis for defendants' [m]otion for summary judgment to be

denied."), 16:9-11 ("Wherefore, Plaintiff contends that he has a right for discovery prior to summary

judgment . . . .").)

As a result of the lack of discovery, Plaintiff asserted that Defendants were not yet aware of

his current medical needs that arose due to the injury he suffered on March 3, 2008. (Doc. 100,

12:14-20 ("This delay not only caused further injury, but this injury plaintiff [sic] has suffered with

continual treatment, medical, vision issues, property loss, emotional, mental issues, and a host of

other issues . . . . They have yet to view plaintiff's continual [m]edical needs at this or any other

treatment.").)  Plaintiff also pointed to evidence that he believed, if he were permitted time to obtain

it through discovery, would defeat Defendants' motion for summary judgment, including the missing

video of the alleged assault, dental records, evidence that his glasses were broken during the assault,

evidence of a mental condition following the assault, and continual medical treatment.  (Doc. 100,

7:14-18.)  Plaintiff also complains that, although Defendant Wheatly filed a declaration in support

of his motion for summary judgment stating that he, Wheatly, was not present at the Target store on

---

[6] In considering Defendants' motions for summary judgment, the Court notes that Plaintiff has submitted multiple briefs, notices, and other documents in support of his opposition. (Docs. 100, 138, 140, 149, 152, 153, 157, 162, 169, and 177.) Plaintiff was also permitted to file supplemental or amended oppositions due to Defendants' supplemental memorandums filed in support of their motions. The Court has considered all the documents filed by Plaintiff that are related to the motions for summary judgment as part of Plaintiff's opposition to Defendants' motions. In other words, the Court has construed all these filings collectively as Plaintiff's opposition to the motions.

the night of the alleged events (Doc. 96, ¶ 3), Plaintiff has been unable to conduct any discovery to determine the identity of the supervisor actually present at the Target store if Wheatly was not present (Doc. 100, 16:24-27).

With regard to Defendant Barrios' motion for summary judgment that was filed on September 16, 2010, Plaintiff filed an opposition on January 24, 2011.  (Doc. 140.)  In his opposition, Plaintiff requested the following:

> Plaintiff wants to point out with emphasis that Defendant Barrios's Motion to Summary [Judgment] mirrors Defendants' [sic] Wheatly and Heller['s] Motion for Summary [Judgment] which this Plaintiff fully responded and a copy x 2 was also served upon Defendant Barrios.
>
> Plaintiff would request the Court note that the opposition to Wheatly's and Heller's Motion for Summary [Judgment] is indeed a mirror of opposition and the same exact opposition argument would apply.  So Plaintiff would request the Court note and use the same opposition (legal theory) in opposition to Barrios' Motion.

(Doc. 140, p. 2.)

Heller and Wheatly filed a reply brief stating that, although Plaintiff may not have had an opportunity to seek discovery prior to the filing of the motion for summary judgment, no further discovery is necessary because there is "nothing in Defendant[s'] possession that would support plaintiff's claim." (Doc. 109, 3:1-2.)  Moreover, Defendants asserted that it is undisputed that once Plaintiff arrived at the Emergency Department on March 3, 2008, his level of acuity was designated as "non-urgent." (Doc. 109, 2:10-12.)  Thus, Plaintiff's medical condition was "non-serious." (*See* Doc. 109, 2:13-14 ("Evidencing the non-serious medical condition, Plaintiff waited an additional 44 minutes before he received a sling.").)  Additionally, Defendants contended that no further discovery is necessary because all surveillance video has been produced, and a complete copy of the Target report, as well as the police report, are in Plaintiff's possession. (Doc. 109, 3:1-3.)  Defendants noted that Plaintiff's medical records are accessible to him and he has had an opportunity to produce those records but has not done so. (Doc. 109, 3:7-9 ("Had there been any medical record or any qualified medical opinion that would support plaintiff's claim that the delay resulted in further significant injury it should be produced.").)

On February 11, 2011, the Court issued an order construing Plaintiff's oppositions to each of the motions for summary judgment as containing Rule 56(f) motions. (Doc. 147.)  The Court

determined that Plaintiff's Rule 56(f) motions were insufficient because they did not identify how the facts or evidence Plaintiff asserted he lacked would preclude Defendants' motions.  In doing so, however, the Court noted that the summary judgment motions were filed "before [Plaintiff] had any realistic opportunity to pursue discovery relating to [his] theory of the case" and allowed Plaintiff an opportunity to renew his 56(f) motion.  At the time of the February 11, 2011, order, discovery had been open for approximately 6 months, and the Court determined that Plaintiff was better positioned to ascertain what evidence had been or was likely to be discovered that was necessary to oppose Defendants' motions for summary judgment.  Therefore, after providing Plaintiff with the applicable standards for filing a Rule 56(f) motion, the Court granted Plaintiff an additional 30 days from the date of the order to renew his Rule 56(f) motion and explain what facts or evidence had been obtained or what would be obtained that would preclude the motions for summary judgment.

On March 2, 2011, Plaintiff filed a document captioned "objection/response of denying Plaintiff's rule 56(f) motion without prejudice (for the record for appellate review)." (Doc. 149.) Plaintiff argued substantively that his Rule 56(f) motion should have been granted; he reiterated his original arguments in opposition to Defendants' motions and further responded that he could not hire a specialist to opine as to the extent of harm caused by his March 3, 2008, broken clavicle.  Plaintiff asserted that he has "not been able, nor know[s] how to do adequate discovery, work, eat, and litigate against professional law firms." (Doc. 149, p. 9-10.)

On April 11, 2011, Plaintiff filed a request that the Court take judicial notice of his recent attempts to obtain medical care "clarifying that Plaintiff does have a continual factor of pain and possibly newly continual diagnosis of injury." (Doc. 152.)  The documents filed in conjunction with Plaintiff's request are medical request forms dated March 27, March 30, and April 6, 2011, seeking treatment for pain in his left forearm that Plaintiff claims is a result the March 3, 2008, broken clavicle he suffered. (Doc. 152, p. 9-11, 13.)  Also included is a form requesting law library access. (Doc. 152, p. 12.)

On May 17, 2011, Plaintiff filed a motion for a 60-day extension of time to renew his 56(f) motion because of his minimal access to research and legal materials. (Doc. 162.)  This motion for an extension of time was denied because Plaintiff had previously been granted an extension of time

to file a renewed Rule 56(f) motion and filed documents pursuant to that order.   Specifically, Plaintiff timely filed a response to the February 11, 2011, order allowing him to renew his Rule 56(f) motion.

Due to the fact that Defendants supplemented their summary judgment motions on May 4 and 12, 2011 (Docs.155, 160), however, Plaintiff was provided an opportunity to amend his brief in opposition to the motions for summary judgment (Doc. 168).   Plaintiff filed a supplemental opposition on August 18, 2011.   (Doc. 169.)   In his supplemental statement in opposition to the motions for summary judgment, Plaintiff reiterated his Rule 56(f) arguments.   As a result, the Court construes these filings as containing Rule 56(f) motions and considers the motions on the merits. Each type of evidence Plaintiff asserts he would obtain in opposition to the motions for summary judgment, if provided additional time to do so, is considered below.

**2.      Legal Standard**

"Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (internal quotation marks omitted).   However, "[i]n making a Rule 56(f) motion, a party opposing summary judgment must make clear what information is sought and how it would preclude summary judgment." *Id.*

**3.      Analysis**

    **a.      Target Video Surveillance Footage Evidence**

In Plaintiff's March 2, 2011, filing (Doc. 149), he reiterated that at least one hour and 47 minutes of Target video surveillance has been withheld by Defendants, and the subpoena he served on Target to collect this evidence was quashed by the Court.   As a result, Plaintiff essentially asserts that he has been prevented from a meaningful opportunity to discover the video surveillance he believes exists but has not been provided to him.   Plaintiff contends that if he were permitted time to obtain this evidence, it would preclude Defendants' motions for summary judgment because it would clearly indicate how seriously he was injured.   (Doc. 149 ("Plaintiff believes with fact he can

1  show obstruction to missing video that clarifies assault as a matter of fact . . . [t]he missing video

2  and injury in itself is enough to defeat summary [judgment].").)

3      In Plaintiff's August 18, 2011, supplemental opposition to Defendants' motions for summary

4  judgment, Plaintiff again asserts that his 56(f) motion should be granted and notes the "missing"

5  video surveillance footage from the Target Store.  (Doc. 169, p. 11 ("Has anyone really asked why

6  would a store have – have on tape a party who shoplifts and not have an exit video to constitute that

7  a shoplifting/crime was executed?  In this case Plaintiff was brutally assaulted (with emphasis).  And

8  the Defendant Michael Yant (termination), [and] tape missing."); p. 13 ("[Defendants] obstructed

9  the missing 1:47 minutes (plus) video, this alone shows a serious doubt in Defendants['] summary

10 [judgment], as a matter of fact, no where do they really dispute Plaintiff was injured – they just argue

11 the threshold of Plaintiff's pain as nothing.").)

12     To adequately support a Rule 56(f) motion, a party must identify facts or evidence that have

13 either *already been discovered* or are *likely to be discovered*.  In other words, there must be a "basis

14 or factual support for [the] assertions that further discovery would lead to the facts and testimony"

15 described in an affidavit submitted pursuant to Rule 56(f).  *Margolis*, 140 F.3d at 854 ("wild

16 speculation" that facts and testimony sought to be discovered would actually be discovered will not

17 support the continuance or denial of summary judgment motions under Rule 56(f)).  Essentially,

18 Plaintiff argues that he has not received all of the video footage because what he has received does

19 not cover the entire time he was present in the Target store on March 3, 2008; particularly, he asserts

20 that while Target produced video showing "the actual alleged shoplifting of taking items off the

21 shelf," it produced no video showing his exit from the store.  Plaintiff asserts it is not reasonable to

22 believe that Target would have surveillance video of his shoplifting inside the store but not have

23 surveillance video of his exit from the store.  (Doc. 149, p. 8; Doc. 169, p. 2-3.)

24     Defendant Heller signed a declaration under penalty of perjury that all relevant surveillance

25 video was provided to Plaintiff.[7]  (Doc. 75, ¶¶ 5-6.)  Other than his belief that Target must have

26 additional relevant surveillance video footage, Plaintiff has presented no basis for his assertion that

27

28     [7] The video was apparently provided to Plaintiff during the course of the criminal action against him related to his theft at the Target store.

the video exists; this amounts only to speculation.  Moreover, while Plaintiff's Rule 45 subpoenas as to Target were quashed, Plaintiff made no attempt to cure the defects in his subpoena request, and he failed to propound any discovery on Defendants related to their knowledge or possession of surveillance video.  Not only has Plaintiff produced no plausible basis to support the assertion that additional surveillance video exists, he has not made diligent efforts to obtain discovery indicating that other video surveillance footage exists.  *See Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001) (district court may deny relief under Rule 56(f) if the party opposing summary judgment has failed to diligently pursue discovery).

Finally, Plaintiff has not established how any video surveillance footage would preclude Defendants' motion for summary judgment.  Even assuming that the video footage existed *and* that it showed that Plaintiff had a serious medical need, the video itself would not establish that a delay in care caused any further harm to Plaintiff.  Thus, Plaintiff has not carried his burden to establish how any missing video footage could preclude summary judgment even if such video did exist.  *See Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006) (affirming denial of Section 1983 plaintiff's request for continuance under Rule 56(f) where plaintiff failed to identify the specific facts that further discovery would have revealed or explain why those facts would have precluded summary judgment).

### b.    Plaintiff's Inability to Secure Expert Witnesses

Plaintiff asserts that he does not have adequate means to oppose the summary judgment motions because he cannot afford to see a doctor to prove that he has further injuries from the two-hour delay in medical care that occurred on March 3, 2008.  (Doc. 149, p. 3 ("Due to Plaintiff's poverty I'm not afforded with HMO's medical insurance"), p. 9 ("Plaintiff cannot afford specialists . . . if the court can show me any [doctor] who will treat an uninsured patient, I'll go.").)  A party's lack of resources to adequately litigate a case is not sufficient cause to grant a continuance or deny a motion for summary judgment pursuant to Rule 56(f).

Additionally, Plaintiff's reference to specialists appears to be an assertion that he requires additional time to seek treatment from a specialist (*see* Doc. 157, p. 2-3; Doc. 177, p. 4), but this is not a request for further discovery.  Instead, this is an argument that he needs additional time to

1   develop evidence to respond to the motions for summary judgment.  Aside from the fact that Plaintiff

2   did not need to wait for the commencement of discovery to develop his own medical evidence for

3   purposes of the litigation, Plaintiff has submitted multiple documents indicating that he only recently

4   requested to see a specialist.  (*See* Doc. 152, p. 13 (requesting on March 30, 2011, that a specialist

5   examine him).)  This does not evidence diligence on the part of Plaintiff.

6        Moreover, Defendants' motions for summary judgment have been pending for more than a

7   year.  During the pendency of these motions, Plaintiff has been provided multiple extensions of time

8   to file oppositions to the motions (Docs. 133, 139, 168), he has been permitted to renew his Rule

9   56(f) motions (Docs. 147, 168), and he has been allowed to file supplemental oppositions (Doc. 169)

10  and submit supporting evidence (*see* Docs. 152, 177).  Plaintiff has had three years to develop his

11  own evidence to support his claims, he has had more than a year to develop evidence specifically

12  tailored to address and overcome the motions for summary judgment, and he has been provided

13  repeated opportunities since the motions were filed to place evidence before the Court to support his

14  opposition.  Further continuances are not warranted.

15

16        **c.      Additional Discovery to Ascertain the Identity or Location of Other
                   Witnesses**

17        Plaintiff continues to assert that, if provided with additional time to conduct discovery, he

18  could locate another potential defendant who was present during the events that occurred on March

19  3, 2008, and potentially another witness.  (Doc. 149, p. 4 ("Plaintiff further submitted past

20  declarations to find out who all doe parties were involved (who was acting supervisor in place of

21  Wheatly)."), p. 11.)  Plaintiff argues that he should be permitted additional time to discover who was

22  acting as Target's store manager on March 3, 2008, when Wheatly was on vacation and not present

23  at the store.  (Doc. 169, p. 14 ("Plaintiff will also file a motion . . . for Target to comply (another

24  subpoena) with the stand-in for Clebo Wheatly").)

25        On August 13, 2010, the Court, in denying Plaintiff's Rule 45 subpoena request directed at

26  Target, specifically informed Plaintiff that he could "seek information directly from Defendants

27  about the identity of any supervisor present during the alleged events of March 3, 2008." (Doc. 120,

28  3:5-6.)  The Court also informed Plaintiff that, if he was "unsuccessful in obtaining the information

1  directly from Defendants pursuant to Rule 34 and the Court's discovery order," he could renew his

2  motion for a subpoena duces tecum. (Doc. 120, 3:7-9.)  Despite the Court's order, Plaintiff did not

3  propound any discovery seeking information about the identity of any supervisor or other witnesses

4  present during the alleged events of March 3, 2008.  Thus, Plaintiff's lack of diligence in conducting

5  any discovery is not a basis to continue or deny Defendants' motion for summary judgment. *See*

6  *Chance*, 242 F.3d at 1161 n.6 (district court may deny relief under Rule 56(f) if the party opposing

7  summary judgment has failed to diligently pursue discovery).

8                    **d.        Service of Defendant Michel Yant**

9          Plaintiff again asserts that he has been unable to locate Michael Yant, a second member of

10  the Target security personnel who participated in the events of March 3, 2008, and thus he should

11  be entitled further opportunities to locate Michael Yant for service of process. (Doc. 169, p. 14

12  ("Plaintiff will also file a motion to request the U.S. Marshals to seek out a thorough . . . search for

13  Michael J. Yant").)   First, whether Michael Yant is located and served with the complaint is

14  irrelevant to the current motions for summary judgment.  Second, a subpoena has been served on

15  Target, pursuant to Plaintiff's motion, for the last-known address of Michael Yant, Target's former

16  employee. (*See* Docs. 89, 116.)  Target disclosed this information pursuant to the subpoena (Doc.

17  111 (sealed)), and the U.S. Marshal was provided the information to serve Michael Yant (Docs. 111,

18  116, 117).   The U.S. Marshal was unable to locate Michael Yant to complete service with the

19  information provided. (Doc. 128, (sealed).)  Thus, the subpoena Plaintiff seeks has already issued,

20  information pursuant to the subpoena has been produced by Target, and the U.S. Marshal has

21  attempted, unsuccessfully, to serve Yant.

22                    **e.        Plaintiff's Inability to Adequately Litigate**

23          Although Plaintiff notes his inability to effectively litigate his case because of his restricted

24  access to the law library and other research materials (Doc. 149, p. 9-10 ("Plaintiff has not been able,

25  nor know how to do adequate discovery, work, eat, and litigate against professional law firms.")),

26  Plaintiff has repeatedly demonstrated an ability to file multiple pleadings, briefs, notices, and

27  motions with the Court during the entire course of the litigation.  These filings demonstrate Plaintiff's

28  ability to propound discovery, but Plaintiff has not attempted to conduct any discovery.

1    While prisoners have a fundamental right of access to the courts, *Lewis v. Casey*, 518 U.S.

2    343, 346 (1996), the right is limited in nature and does not entitle prisoners to the best possible

3    access or even ideal access, *Phillips v. Hust*, 588 F.3d 652, 656 (9th Cir. 2009).  Prison officials are

4    not required to enable prisoners to discover grievances or litigate effectively once in court.  *Lewis*,

5    518 U.S. at 354.  Plaintiff's inability to litigate effectively does not constitute a basis to continue or

6    deny Defendants' motions for summary judgment pursuant to Rule 56(f).  Moreover, the Court has

7    afforded Plaintiff several extensions of time to file oppositions to the motions – including

8    supplemental oppositions to the motions – and Plaintiff has been permitted to file multiple other

9    documents during the pendency of the motions for summary judgment, including medical evidence,

10   in support of his opposition.  Not only does the sheer number of documents filed by Plaintiff indicate

11   that he was able to propound discovery and participate in the litigation, but Plaintiff has been

12   provided repeated opportunities to place his evidence before the Court.

13          **f.    Conclusion**

14          Plaintiff has not established that he is entitled to any further continuance or a denial of

15   Defendants' motions for summary judgment pursuant to Rule 56(f).  Plaintiff does not identify any

16   evidence that he could obtain in discovery that would preclude Defendants' motions.  Additionally,

17   Plaintiff has shown a lack of diligence by failing to conduct any discovery.  Thus, any argument that

18   Plaintiff has been unable to procure information is not a product of Defendants' motions being filed

19   prematurely, but is predicated on Plaintiff's lack of diligence in participating in discovery.  Further,

20   Plaintiff's purported inability to litigate without the assistance of an attorney or while incarcerated

21   does not provide a basis for granting a Rule 56(f) motion.  Finally, Plaintiff has been provided many

22   additional opportunities to present evidence and argument in opposition to the summary judgment

23   motions during the time that the motions have been pending.  For all those reasons, Plaintiff's motion

24   for a continuance or denial of Defendants' motions for summary judgment pursuant to Rule 56(f) is

25   DENIED.[8]

26

27   _____

28   [8] As a practical matter, because Plaintiff continually filed documents in opposition to Defendants' motions which the Court has construed as part of Plaintiff's opposition to the motions, Plaintiff was effectively afforded the relief he sought under 56(f).

**B.      Defendants' Motions for Summary Judgment**

**1.      Legal Standard  – Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  With respect to an issue as to which the nonmoving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading; rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id.* "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

**2.      Legal Standard – Deliberate Indifference Based on Delay in Medical Treatment**

The Eighth Amendment's prohibition against cruel and unusual punishment only protects convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The rights of pre-trial state detainees are analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, but the same standards apply. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1988). "[T]o maintain an Eighth Amendment claim based on prison medical treatment, a claimant must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

**a.      Serious Medical Need**

The two-part test for deliberate indifference requires a plaintiff to show a serious medical need by demonstrating that failure to treat the detainee's condition could result in further significant injury or the unnecessary and wanton infliction of pain and that the defendant's response to the need was deliberately indifferent. *Jett*, 439 F.3d at 1096. Examples of a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important or worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activity; or the existence of chronic or substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1987) (en banc).

**b.      Deliberate Indifference**

"In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106 ("Deliberate indifference is a high legal standard."). Deliberate indifference is shown by a purposeful act or failure to respond to a detainee's pain or possible medical need, and harm caused by the indifference. *Id.* Deliberate indifference may be manifested when the state actor denies, delays, or intentionally interferes with medical treatment. *Id.*

1    Where a plaintiff is alleging that delay of medical treatment evinces deliberate indifference,

2    he or she must show that the delay led to further injury.  *See Hallett v. Morgan*, 296 F.3d 732, 745-

3    46 (9th Cir. 2002); *McGuckin* 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*,

4    766 F.2d 404, 407 (9th Cir.1985) (per curiam).  A delay in providing medical treatment does not

5    constitute deliberate indifference unless the delay was harmful.  *Hunt v. Dental Dep't*, 865 F.2d 198,

6    200 (9th Cir. 1989) (quoting *Shapley*, 766 F.2d at 407); *see Hallett*, 296 F.3d at 746 (the Eighth

7    Amendment is only violated if "delays occurred to patients with problems so severe that delays

8    would cause significant harm that Defendants should have known this to be the case"); *Wood v.*

9    *Housewright*, 900 F.2d 1332, 1333-35 (9th Cir. 1990) (holding that a delay of several days in

10   receiving pain medication for a broken shoulder did not amount to a constitutional violation).

11   Although the harm need not be substantial, the seriousness of the harm caused by the delay when the

12   defendant could have acted to prevent the harm is indicative of deliberate indifference.  *McGuckin*,

13   974 F.2d at 1060.

14       **3.      Defendants Heller and Wheatly's Motion for Summary Judgment**

15           **a.      Defendants Heller and Wheatly's Position**

16       Heller and Wheatly assert that they are entitled to summary judgment because Plaintiff has

17   no evidence of a "serious medical need" for which immediate medical treatment was necessary.

18   (Doc. 92, 4:26-27 - 5:1-8.) When Plaintiff was admitted to the hospital, his condition was labeled

19   "non urgent." (Doc. 92, 4:27-5:2.)  Heller and Wheatly assert that any delay in treatment caused

20   Plaintiff no further injury.  (Doc 92, 5:10-12.)  Moreover, Heller and Wheatly maintain that they

21   were not deliberately indifferent to any medical need because they did not know Plaintiff suffered

22   from a broken clavicle.

23       Wheatly filed a declaration stating that he neither participated in the detention of Plaintiff nor

24   observed Plaintiff on March 3, 2008, because he was on vacation on that date and not in the Target

25   store where the events occurred.  (Doc. 96, ¶¶ 3-5.)  Thus, Wheatly asserts that he could not be found

26   deliberately indifferent because he was not present at the time of the alleged events.  Moreover,

27   Wheatly joins in Heller's argument that the delay in Plaintiff's treatment caused no further injury and,

28   therefore, did not constitute deliberate indifference.

1    On May 4, 2011, Heller and Wheatly submitted a "supplemental memorandum of points and

2    authorities in reply to Plaintiff's Opposition to their Motion for Summary Judgment." (Doc. 155.)

3    Defendants assert that Plaintiff's deposition was completed on April 12, 2011. (Doc. 155, 1:26.)

4    During the course of the deposition, Plaintiff was asked to describe the medical care he received in

5    the emergency department on the date of the incident. (Doc. 155, 1:27-2:38; Doc. 156-1, 2:5-18.)

6    Plaintiff acknowledged that he refused pain medication offered to him at the emergency department.

7    (Doc. 155, 2:4-9; Doc. 156-1, 2:13-15.) In their supplemental brief, Heller and Wheatly assert that,

8    because Plaintiff admitted during his deposition that he turned down pain medication at the

9    emergency room and because the emergency room doctor made no statements that the delay caused

10   Plaintiff any further injury, Plaintiff's "claim of deliberate indifference must be denied." (Doc. 155,

11   3:5-10.)

12          **b.      Plaintiff's Opposition**

13          Plaintiff filed an opposition in response to Defendants Heller and Wheatly's summary

14   judgment motion on July 21, 2010.[9] (Doc. 100.) Aside from asserting that he has not had an

15   adequate chance to conduct any discovery to support his case, Plaintiff asserts that Defendants'

16   position essentially ignores the fact that he was injured and that Defendants Heller and Yant were

17   indifferent to his pain. (Doc. 100, 8:21.) Plaintiff contends that he was "confronted by Defendant[s]

18   Heller and Yant outside of the Target Store where he was immediately assaulted, beaten up, causing

19   serious injury." (Doc. 100, 9:10-12.) He asserts that he informed each of the defendants that he

20   needed to go to the hospital, but his pleas for help were ignored. (Doc. 100, 9:21-23.)

21          Plaintiff asserts that, while he waited for Barrios to return to the Target store, Plaintiff was

22   handcuffed and in "serious pain." (Doc. 100, 12:1-3.) Plaintiff also asserts that he had a serious cut

23   on his finger, which required a band-aid – an injury of which all Defendants were aware. (Doc. 100,

24   p. 14.) Further, Defendants authored a report regarding the incident indicating that Plaintiff was

25

26          [9] All of the documents Plaintiff filed in opposition to the motions for summary judgment were signed under
27   penalty of perjury and, to the extent the statements contained in those documents are based on personal knowledge and
     sets forth specific facts admissible in evidence, they are viewed as constituting an opposing affidavit for purposes of the
28   summary judgment rule. *McElyea v. Babbit*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam); *Lew v. Kona Hosp.*,
     754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56.

1   injured. (Doc. 100, p. 14.)  Plaintiff provided a copy of the Target incident report, which was

2   completed by Michael Yant. (Doc. 100, p. 24-25.) Plaintiff argues this report shows that Defendants

3   were aware that he was seriously injured, and yet delayed in providing him with any medical care.

4   (Doc. 100, 2:21-26 ("Not only were defendants aware of plaintiff's injury[,] but in their own [Asset]

5   Protection Specialist (APS) report authored by Yant/Heller (See Exhibit page F. & G.) they marked

6   on one page "Y" for yes 'injured' and on another page "N" for 'not injured," that alone establishes that

7   this entire interval is [in] dispute and also clarifies that they were indifferent to plaintiff's serious

8   medical needs.").)[10]

9        Plaintiff asserts that Yant and Heller mistakenly believed that he was related or involved with

10   a former Target employee, Yvonne Lynn Cramer, who was responsible for burglarizing a Target

11   Store.  (Doc. 100, 3:9-16.)  Plaintiff asserts that they questioned him in an attempt to extract

12   information related to that burglary.  (Doc. 100, 3:13-16.)  Plaintiff argues that his injures were

13   severe, and the injury to his hand obvious, because he "passed out no less than 4 times," and argues

14   that it is "absurd to believe that for 2 plus hours of excru[c]iating pain [Plaintiff] would not

15   complain, when in fact once Officer Barrios did finally return he immediately transported plaintiff

16   to the hospital." (Doc. 100, 3:17-20.)

17        Plaintiff disputes that Heller has no medical training because Heller "apparently has enough

18   diagnosis and/or expertise to realize when a band-aid is needed." (Doc. 100, 15:4-6.)  Plaintiff

19   disputes that the seriousness of his injury was objectively apparent because "[t]here was blood

20   throughout the entire store," from the cut on Plaintiff's finger. (Doc. 100, 15:9-10).  Further, "[t]here

21   was swelling and serious redness, and a continual bruising." (Doc. 100, 15:11-12.)  In response to

22   Dr. DiRaimondo's declaration submitted in support of Defendants' motion, Plaintiff asserts that no

23   neurological exam was performed at the emergency department, as far as Plaintiff is aware, and old

24   records of a prior injury to Plaintiff's clavicle show many of the issues that Defendants "re-caused."

25   (Doc. 100, 15:20-21.)  Moreover, Plaintiff asserts that, although Dr. DiRaimondo states that the

26

27        ───────────────

28        [10] After reviewing the Target incident report attached as an exhibit to Plaintiff's July 21, 2010, opposition brief, the Court notes that the "N" that indicated "not injured" appears to relate to Yant's condition, not to Plaintiff's condition. (*See* Doc. 100, p. 25.)

1  medical records show Plaintiff did not report a loss of consciousness, Plaintiff did lose consciousness

2  at the Target store four times.  (Doc. 100, 15:22.)

3       On August 18, 2011, Plaintiff submitted a supplemental opposition to Defendants' motion

4  for summary judgment and Defendants' supplemental brief in support of their motion for summary

5  judgment.  (Doc. 169.)  Plaintiff asserts that he refused narcotic pain medication at the emergency

6  room on March 3, 2008, because he is "doing his best to be totally free of drugs/he is a drug addict

7  of cocaine."  (Doc. 169, p. 6.)

8       **c.**    **Analysis**

9       The Court finds that Heller and Wheatly have met their initial burden of informing the Court

10  of the basis for their motion and identifying those portions of the record which they believe

11  demonstrates the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff

12  to establish the existence of this factual dispute.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

13  *Radio Corp.*, 475 U.S. 574, 586 (1986).  Plaintiff may not rely upon mere allegations or denials of

14  his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

15  admissible discovery material, in support of his contention that the dispute exists.  Fed. R. Civ. P.

16  56(e); *Matsuchita*, 475 U.S. at 586 n. 11 (1986); *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S.

17  253, 289 (1968); *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

18       **(i)**    **Defendant Wheatly**

19       Pursuant to his declaration, Wheatly was not present at the Target store during the events of

20  March 3, 2008.  (Doc. 96, ¶¶ 3-4.)  Plaintiff does not dispute this fact, but argues instead that

21  Defendants have hidden this information in an effort to obstruct justice.[11]  (Doc. 100, 13:11-14.)  As

22  Wheatly was not present at the Target store on March 3, 2008, he did not participate in the detention

23  or arrest of Plaintiff and could not have been aware of Plaintiff's injuries.  As such, there are no

24

25  [11] Plaintiff discovered Clebo Wheatly's identity as Target's store manager as follows: "Plaintiff, who had to rely
on independent investigation, was able to contact Target to find out whom was the Store Manager and/or Yant and

26  Heller's supervisor[,] and was provided with the name Clebo Wheatly. (Doc. 100, 13:11-14.) Plaintiff has presented
no evidence that, upon learning in July 2010 that Clebo Wheatly was not the store manager, he served any discovery on

27  Defendants to determine the name of any other supervisors who were present at the Target store on March 3, 2008.
Further, the Court specifically informed Plaintiff in its August 13, 2010, order that if Plaintiff wished to discover

28  information about who was present at the Target store, he was entitled to serve discovery on Defendants in an attempt
to gather this information.  (Doc. 120, 3:5-6.)

1   triable issues of material fact as to whether Defendant Wheatly was deliberately indifferent to

2   Plaintiff's serious medical needs.

3                          **(ii)   Defendant Heller**

4          It is undisputed that Plaintiff suffered a fractured clavicle during the events that occurred  on

5   March 3, 2008, at the Tulare Target store.  It is also undisputed that there was approximately a two-

6   hour delay between the time Plaintiff was injured and the time he was taken to the emergency room.

7   Plaintiff, however, has not submitted any evidence indicating that the two-hour delay in receiving

8   emergency care for his broken clavicle exacerbated his injury or caused him harm.  *See Berry v.*

9   *Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (absent evidence that minor delays in medical treatment

10  of inmate caused him any harm, there was no violation of the Eighth Amendment).  The fact that

11  Plaintiff believes that he should have been treated immediately and that the delay caused him harm

12  does not create a triable issue of fact.  *See Fleming v. Lefevere*, 423 F. Supp. 2d 1064, 1070 (C.D.

13  Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue

14  of fact because he has not shown that he has any medical training or expertise upon which to base

15  such an opinion.").

16         Plaintiff asserts in his supplemental opposition that he has "suffered with continual treatment,

17  medical, vision issues, property loss, emotional, mental issues, and a host of other issues whereas,

18  plaintiff has continual medical/dental needs due to the entire interval caused by the plaintiff."  (Doc.

19  100, 12:15-18.)  Plaintiff also contends that he "is still seeking – in custody medical treatment due

20  to problems attributed to Defendants' acts of abuse."  (Doc. 169, p 5.)  Additionally, Plaintiff

21  submitted the declaration of Christopher Lee Sheek who stated that he has "witnessed on several

22  occasions Mr. Cramer to try and seek medical attention for an injured shoulder and eye problems."

23  (Doc. 169, p. 20, Exhibit A.)  These statements, however, do not constitute medical evidence that

24  the approximately two-hour *delay* in receiving treatment on March 3, 2008, caused the medical

25  issues for which Plaintiff is presently seeking care.  Moreover, Plaintiff is not a medical expert who

26  can opine that the approximate two-hour delay in medical treatment caused the further harm he

27  alleges.  Nor has Plaintiff submitted any evidence demonstrating that the two-hour delay created a

28  substantial risk of harm to Plaintiff's health or was medically unacceptable under the circumstances.

1    Even accepting that Plaintiff's broken clavicle and the pain suffered as a result constituted

2  a serious medical condition, two to three hours is not a length of delay under the circumstances

3  presented here that meets the constitutional threshold for deliberate indifference based on a delay in

4  medical treatment.  Delays of longer than two hours, particularly for conditions that are not life-

5  threatening, are almost routinely experienced in emergency rooms across the country.  *See Gibson*

6  *v. Woodford*, No. 1:06-cv-1805-BLW-MHW, 2010 WL 596228, at * 4 (E.D. Cal. Feb. 16, 2010)

7  (delays of over an hour for medical care "are often encountered in emergency rooms across the

8  country under comparable circumstances" and such delay does not rise to the level of constitutional

9  violation).  Delays in receiving treatment for injuries such as Plaintiff's are routine to the extent that,

10  even if medical treatment were immediately sought, others who suffer from injuries similar to

11  Plaintiff's can expect to experience lengthy delays in treatment in an emergency room.  (DiRaimondo

12  Decl., Docs. 94, 129, ¶ 5 ("Depending on how busy an emergency room is upon arrival, a patient

13  with a condition which is later diagnosed with a simple closed fracture of the clavicle can often wait

14  many hours to be seen and treated by a medical doctor.").)

15    Although a delay in treating pain may rise to the level of a constitutional violation,

16  *McGuckin*, 974 F.3d at 1060, the evidence and facts presented here do not meet the constitutional

17  threshold.  Plaintiff's condition was neither life-threatening nor fast-degenerating, it was labeled as

18  "non-urgent" by the medical professionals who cared for Plaintiff at the emergency room, Plaintiff

19  waited an additional 44 minutes for care after being admitted to the emergency room, and the

20  treatment – even after the delay – only constituted the application of a sling to Plaintiff's arm.

21  (DiRaimondo Decl., Doc. 94, ¶¶ 4-6); *see Hallett v. Morgan*, 287 F.3d 1193, 1206 (9th Cir. 2002)

22  (The Eighth Amendment is only violated "if delays occurred to a patient with problems so severe that

23  delays would cause significant harm that defendants should have known"); *Berry,* 39 F.3d at 1057

24  (one-day delay in receiving medication does not constitute deliberate indifference when there was

25  no evidence "the [] minor delay [] caused any harm"); *Palacio v. Acasio*, No. 02 Civ. 6726 (PAC)

26  (JCF), 2006 WL 2372250, at *11 (S.D.N.Y. Aug. 11, 2006) (finding that, at summary judgment,

27  where delay in treatment was, at most, a little more than two hours, and "nothing in the record

28  suggest[ed] that [p]laintiff suffered from a life-threatening or fast-degenerating condition or that

prison officials deliberately delayed his treatment as a form of punishment," delay did not rise to the level of deliberate indifference).

Plaintiff offers medical reports as evidence that he suffers further complications and injuries stemming from the fractured clavicle that he suffered on March 3, 2008. (*See* Doc. 177, p. 4 ("To note Plaintiff has on-going medical needs caused by Defendants and may need further specialist treatment (MRI etc. as also noted on Exhibits # K"); p. 7 (September 9, 2011, radiology report indicating "[s]evere deformity of the midshaft of the left clavicle identified with healed fracture, class A type"); p. 16 (October 2009 radiology report indicating "[p]robable narrowing of the coracoacromial arch as a result of inferior angulation of the distal clavicle and lateral downsloping of the acromion. These findings may lead to impingement syndrome and, if clinically indicated, an MRI would be of further value"), p. 17 (Plaintiff's September 2010 medication chart listing Naproxen as one of his prescribed medications).) Plaintiff also asserts that he has requested to see a specialist in relation to continuing medical issues he has with the clavicle that was fractured during the events of March 3, 2008. (*See* Doc. 152, p. 13 (Plaintiff's March 30, 2011, request for inmate health care seeking to see a specialist for pain and follow-up care).)

The question for purposes of Plaintiff's claim, however, is not whether the injuries he sustained on March 3, 2008, have caused him any further harm, but whether the *delay* in treatment caused him any further harm. It is the *delay* in treatment that is the essence of Plaintiff's civil rights claim for deliberate indifference, not the harm he suffered as a result of his injury in and of itself. In the face of Dr. DiRaimondo's expert opinion that the delay in treatment had no consequence at all, none of the medical records Plaintiff submits create a triable issue of fact with regard to whether the *delay* in treatment on March 3, 2008, caused him any further harm. (*See* Doc. 94, ¶ 4 ("delay in treatment of 2-3 hours had no consequence at all").)

Finally, Plaintiff refused all pain medication when it was offered to him at the emergency room. (Doc. 156-1, 5:5-18.) Notwithstanding that Plaintiff may have legitimate reasons for refusing pain medication due to addiction issues, the fact remains that Plaintiff was not placed in a different or better position with respect to pain after having been provided treatment at the emergency room. The only care that was ultimately provided was a sling that Defendant Barrios was instructed to place

on Plaintiff's injured shoulder.  Thus, there is no evidence that such a short delay in care caused Plaintiff any further harm rising to the level of a constitutional deprivation.

In sum, the undisputed facts demonstrate that the two-hour delay in medical care on March 3, 2008, caused Plaintiff no further harm or injury.  As such, Defendant Heller is entitled to summary judgment as to Plaintiff's claim of deliberate indifference to a serious medical need.

**5.     Defendant Barrios' Motion for Summary Judgment**

**a.     Defendant Barrios' Position**

On September 16, 2010, Defendant Barrios filed a motion for summary judgment.  (Doc. 127.)  Defendant Barrios asserts that Plaintiff did not have a "serious" medical need such that immediate medical treatment was necessary.  (Doc. 127, 5:12-6:1.)  In support of this contention, Defendant Barrios asserts that the emergency medical staff designated Plaintiff's acuity level as "non urgent."  (Doc. 127, 5:18.)  After Plaintiff was admitted to the emergency room, he waited an additional 44 minutes before Defendant Barrios was given a sling to provide to Plaintiff.  Defendant Barrios contends that Plaintiff suffered an identical injury in 2005 and waited three days before seeking treatment.  (Doc. 127, 5:21-6:1.)

Defendant Barrios also asserts that the delay did not cause any further harm or injury.  (Doc. 127, 6:3-7:1.)  According to Dr. DiRaimondo, a board-certified medical doctor in the field of orthopedic surgery, the treatment provided was appropriate and no further problems resulted from the two-hour delay in being brought to the hospital.  (Doc. 127, 6:3-6.)

Finally, Barrios asserts that he does not have the medical training to diagnose a broken clavicle, and he did not observe any other injury to Plaintiff except a cut to his finger.  (Doc. 127, 6:7-10.)  Defendant Barrios did not observe any weakness, swelling, or deformity of Plaintiff's arm or shoulder.  (Doc. 127, 6:10-11.)  As Plaintiff was immediately handcuffed upon detention, Barrios contends he did not have any opportunity to observe that Plaintiff experienced any restriction in his arm movement.  (Doc. 127, 6:11-13.)  Thus, Barrios asserts that he had no reason to suspect or infer that Plaintiff suffered any injury and he was not subjectively aware that Plaintiff needed any medical treatment at the time Plaintiff asserts he was injured.  (Doc. 127, 6:22-24.)  As a result, the

1  approximate two-hour delay in treatment was not deliberately indifferent and Plaintiff suffered no

2  harm as a result.  (Doc. 127, 6:25-7:1.)

3       On May 12, 2011, Defendant Barrios filed a supplemental statement in support of his motion

4  for summary judgment.  (Doc. 160.)  Defendant Barrios noted that Plaintiff's deposition was

5  completed on April 12, 2011, during which Plaintiff described the treatment he received at the

6  emergency department on the night of the alleged events.  (Doc. 160, 2:5-9.)  During the deposition,

7  Plaintiff "confirmed the treatment as described by Defendant's expert, Dr. DiRaimondo that it

8  consisted solely of providing a sling to wear."  (Doc. 160, 2:9-11.)  Plaintiff also acknowledged that

9  he turned down offers of pain medication at the emergency department.  (Doc. 160, 2:11-12.)

10 Plaintiff further acknowledged that the emergency department physician did not tell Plaintiff that the

11 delay of over two hours had caused further significant injury.  (Doc. 160, 2:21-23.)  Finally,

12 Defendant Barrios asserts that Plaintiff's deposition testimony confirms that he was taken to the

13 hospital immediately after informing Defendant Barrios that he was injured.  (Doc. 160, 3:4-4:4.)

14 **b.     Plaintiff's Opposition**

15      In Plaintiff's original January 24, 2011, brief in opposition to Barrios' motion for summary

16 judgment, Plaintiff asserts that Defendant Barrios' motion was made on the same arguments as

17 Defendant Heller and Wheatly's motion for summary judgment and asked that the Court "note and

18 use the same opposition (legal theory) in opposition to Barrios's motion."  (Doc. 140, p. 2.)

19      In articulating his opposition, Plaintiff asserts that he informed Barrios of his injuries when

20 Barrios responded to the Target Store.  (Doc. 140, p. 3.)  Although he informed Barrios that he was

21 injured, Barrios left him with the Target security personnel for over two hours.  (Doc. 140, p. 4.)

22 Plaintiff claims that he "suffered additional abuse of unwanton pain" for over two and a half hours

23 "due to Mr. Barrios abandoning Plaintiff."  (Doc. 140, p. 4.)  Plaintiff contends that for the two and

24 a half hours he was left with Target personnel, he was handcuffed behind his back, and suffered a

25 "shattered clavicle, broken glasses, cut hand, and dental/face damage."  (Doc. 140, p. 4.)  Further,

26 Plaintiff asserts that "Defendant Barrios [k]new Plaintiff was in acute/serious pain when the E.R.

27 Drs. Ordered him 'not' to recuff Plaintiff with hands behind his back as a sling was provided."  (Doc.

28 140, p. 4.)

27

1   In his supplemental opposition to Defendants' motions for summary judgment, Plaintiff

2   asserts that he suffers from medical complications and further harm arising out of his injuries on

3   March 3, 2008.  (Doc. 160, p. 5 ("Plaintiff further [asserts] that 'to-date' he is still seeking – in

4   custody medical treatment due to problems attributed to Defendants['] acts of abuse"); Doc. 177.)

5   In support of his contention that he has suffered further injury as a result of the delay in receiving

6   medical care on March 3, 2008, for a broken clavicle, Plaintiff submits a declaration from a "fellow

7   inmate" who "witnessed on several occa[sions] Mr. Cramer to try and seek medical attention for an

8   injured shoulder and eye problems."  (Doc. 169, Exhibit A, p. 20.)

9   Additionally, Plaintiff has submitted recent medical records indicating the medical treatment

10  Plaintiff has sought since his March 3, 2008, injuries.  (*See* Docs. 177, p. 6-19.)  Further, Plaintiff

11  argues that his refusal of pain medication at the emergency department on March 3, 2008, "does not

12  mean his pain and/or injury is resolved."  (Doc. 169, p. 7.)

13  **c.   Analysis**

14  The Court finds that Defendant Barrios has met his initial burden of informing the Court of

15  the basis for his motion and has identified those portions of the record which he believes

16  demonstrates the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff

17  to establish the existence of this factual dispute.  *See Matsushita*, 475 U.S. at 586.  Plaintiff may not

18  rely upon mere allegations or denials of his pleadings, but is required to tender evidence of specific

19  facts in the form of affidavits, and/or admissible discovery material, in support of his contention that

20  the dispute exists.  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11; *First Nat'l Bank*,

21  391 U.S. at 289; *Strong*, 474 F.2d at 749.

22  It is undisputed that Plaintiff was detained for shoplifting at a Target store on March 3, 2008,

23  and he subsequently pled no contest to related theft charges.  It is also undisputed that (1) Plaintiff

24  suffered a broken clavicle during the course of his detention on March 3, 2008, (2) he waited

25  approximately 2 hours before receiving transport to the emergency room for care, and (3) Plaintiff

26  waited another 44 minutes at the emergency room prior to being treated.  Further, Dr. DiRaimondo

27  opined that Plaintiff's medical records indicate that he was treated for "a simple closed fracture with

28  no blood vessel or tissue injury."  (DiRaimondo Decl., Doc. 94, ¶ 3.).   The treatment prescribed

1   included only the application of a sling.  (DiRaimondo Decl., Doc. 94, ¶ 4.)  Plaintiff does not

2   dispute the nature of the condition or the extent of the treatment at the emergency room.  The parties

3   do not dispute that Plaintiff refused pain medication offered to him at the emergency room, although

4   Plaintiff asserts the reason he refused pain medication related to substance-abuse issues, not the

5   absence of any pain or injury.  (Doc. 169, p. 6; Cramer Depo., p. 151:5-15.)

6          As with Wheatly and Heller's motion for summary judgment discussed above, even accepting

7   Plaintiff's contention that his broken clavicle comprised a serious medical need, Plaintiff has not

8   established a triable issue of fact with regard to whether the approximately two-hour delay in

9   transport to the emergency room for treatment resulted in further harm.  As set forth above, delays

10  of longer than two-hours in receiving medical care, particularly for conditions that are not life-

11  threatening, are almost routinely experienced in emergency rooms across the country.  *See Gibson*,

12  2010 WL 596228, at * 4 (delays of over an hour for medical care "are often encountered in

13  emergency rooms across the country under comparable circumstances" and such delay does not rise

14  to the level of constitutional violation); (DiRamondo Decl., Doc. 94, ¶ 5 ("Depending on how busy

15  an emergency room is upon arrival, a patient with a condition which is later diagnosed [as] a simple

16  closed fracture of the clavicle can often wait many hours to be seen and treated by a medical

17  doctor.").)

18         Although a delay in treating pain may constitute a constitutional violation, *McGuckin*,

19  974 F.2d at 1060, the evidence and facts presented here do not meet the constitutional threshold.  Dr.

20  DiRamondo's declaration indicates that Plaintiff's condition was neither life-threatening nor fast-

21  degenerating, it was labeled as "non-urgent" by the medical professionals who cared for Plaintiff at

22  the emergency room, Plaintiff waited an additional 44 minutes for care after being admitted to the

23  emergency room, and the treatment – even after the delay – only constituted the application of a sling

24  to Plaintiff's arm.  (Doc. 94, ¶¶ 4-6); *see Hallett*, 287 F.3d at 1206 (The Eighth Amendment is only

25  violated "if delays occurred to a patient with problems so severe that delays would cause significant

26  harm that defendants should have known"); *Palacio*, 2006 WL 2372250, at *11 (finding that, at

27  summary judgment, where delay in treatment was, at most, a little more than two hours, and "nothing

28  in the record suggest[ed] that [p]laintiff suffered from a life-threatening or fast-degenerating

1  condition or that prison officials deliberately delayed his treatment as a form of punishment," delay

2  did not rise to the level of deliberate indifference).  Based upon a review of Plaintiff's emergency-

3  room medical records, Dr. DiRaimondo opined that Plaintiff's injury "was not a serious injury and

4  a delay in treatment of 2-3 hours had no consequence at all."  (DiRaimondo Decl., Doc. 94, ¶ 4.)

5       Plaintiff has offered no evidence to show that he suffered further harm as a result of the

6  approximate two-hour delay in medical treatment he experienced on March 3, 2008.  Plaintiff asserts

7  that he has "suffered with continual treatment, medical, vision issues, property loss, emotional,

8  mental issues, and a host of other issues whereas, plaintiff has continual medical/dental needs due

9  to the entire interval caused by the plaintiff."  (Doc. 100, 12:15-18.)  Plaintiff also contends that he

10 "is still seeking – in custody medical treatment due to problems attributed to Defendants' acts of

11 abuse." (Doc. 169, p 5.)  Additionally, Plaintiff submitted the declaration of Christopher Lee Sheek

12 who stated that he has "witnessed on several occasions Mr. Cramer to try and seek medical attention

13 for an injured shoulder and eye problems."  (Doc. 169, p. 20, Exhibit A.)  These statements,

14 however, do not constitute medical evidence that the two-hour delay in care on March 3, 2008,

15 caused the medical issues for which Plaintiff is presently seeking care.  Moreover, Plaintiff is not

16 a medical expert who can opine that the two-hour delay in medical treatment caused the further harm

17 he alleges.  The fact that Plaintiff believes he should have been treated immediately and the delay

18 in medical treatment caused him harm is insufficient to create a material issue of triable fact.  *See*

19 *Fleming*, 423 F. Supp. 2d at 1070 ("Plaintiff's own opinion as to the appropriate course of care does

20 not create a triable issue of fact because he has not shown that he has any medical training or

21 expertise upon which to base such an opinion.").

22      Plaintiff offers medical reports as evidence that he suffers further complications and injuries

23 stemming from the fractured clavicle that he suffered on March 3, 2008.  (*See* Doc. 177, p. 4 ("to

24 note Plaintiff has on-going medical needs caused by Defendants and may need further specialist

25 treatment (MRI etc. as also noted on Exhibits # K")); p. 7 (September 9, 2011, radiology report

26 indicating "[s]evere deformity of the midshaft of the left clavicle identified with healed fracture,

27 class A type"); p. 16 (October 2009 radiology report indicating [p]robable narrowing of the

28 coracoacromial arch as a result of inferior angulation of the distal clavicle and lateral downsloping

1   of the acromion.  These findings may lead to impingement syndrome and, if clinically indicated, an

2   MRI would be of further value."), p. 17 (Plaintiff's September 2010 medication chart listing

3   Naproxen as a medication he is prescribed).)  Plaintiff also asserts that he has requested to see a

4   specialist in relation to continuing medical issues he has with the clavicle that was fractured during

5   the events of March 3, 2008.  (*See* Doc. 152, p. 13 (Plaintiff's March 30, 2011, request for inmate

6   health care seeking to see a specialist for pain and follow-up care).)

7       The essence of Plaintiff's claim for deliberate indifference, however, is predicated on the

8   theory that the Defendants' two-hour delay in seeking treatment for him caused him further harm.

9   Plaintiff's assertion with regard to these medical records is that they are proof of the further medical

10  problems and complications he suffers as a result of the clavicle injury – not that the delay in

11  treatment caused further injury.   None of the medical records create a triable issue of fact that the

12  delay in treatment, as opined by Dr. DiRaimondo, had "no consequence at all." (Doc. 94, ¶ 4.)

13      Finally, as explained above, Plaintiff refused all pain medication when it was offered to him

14  at the emergency room.  (Doc. 160, 2:13-20.)  Plaintiff does not dispute that he refused pain

15  medication, but asserts that a substance-abuse issue, not a lack of pain or injury, was the reason that

16  he declined the medication. (Doc. 169, p. 6; Doc. 160, 2:13-20.) Notwithstanding that Plaintiff may

17  have legitimate reasons for refusing pain medication due to addiction issues, the fact remains that

18  Plaintiff was not placed in a better position with respect to pain after having been provided medical

19  treatment.   The only care that was ultimately provided was a sling that Defendant Barrios was

20  instructed to place on Plaintiff's injured shoulder.  (Doc. 94, ¶ 4; Doc. 160, 2:18-20.)  Plaintiff has

21  offered no evidence that such a short delay in care caused Plaintiff any further harm rising to the

22  level of a constitutional deprivation.

23      In sum, Plaintiff has not presented a triable issue of material fact that the delay in medical

24  treatment he experienced on March 3, 2008, caused him any further injury and that Barrios was

25  deliberately indifferent to Plaintiff's serious medical need.  Rather, the undisputed facts establish that

26  Plaintiff suffered no further harm as a result of the short delay in medical care he experienced.  A

27  reasonable trier of fact could not return a verdict in Plaintiff's favor based on the evidence presented.

28  For all the reasons stated above, Defendant Barrios' motion for summary judgment is GRANTED.

31

1    Accordingly, THE COURT HEREBY ORDERS that:

2        1.      Defendants Heller and Wheatly's Motion for Summary Judgment is GRANTED; and

3        2.      Defendant Barrios' Motion for Summary Judgment is GRANTED.

4

5    IT IS SO ORDERED.

6    **Dated:   November 22, 2011**              /s/ **Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28